❑ Original     ❑ Duplicate Original

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | )   Case No. 23-892M(NJ) |
| An Apple iPhone (unknown serial number) that was located between the | ) |
| center console and driver seat of a stolen Honda Civic. Fingerprints | ) |
| found on the Device matched to Kentreal EVANS, currently in custody at | ) |
| the ATF Milwaukee Field Office, item #16 | ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before 5/2/2023_____ *(not to exceed 14 days)*
❑ in the daytime 6:00 a.m. to 10:00 p.m. ❑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Honorable Nancy Joseph_____ .
*(United States Magistrate Judge)*

❑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❑ for _____ days *(not to exceed 30)* ❑ until, the facts justifying, the later specific date of _____ .

Date and time issued: 4/18/2023 @ 12:07 p.m._____

_____
*Judge's signature*

City and state:   Milwaukee, WI_____

Honorable Nancy Joseph, US Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A**
**Property to Be Searched**

The property to be searched is a cellular phone recovered from a stolen Honda Civic bearing Wisconsin plate ##APJ2292 that was seized on March 14, 2023, more fully described as the following:

    a. An Apple iPhone (unknown serial number) that was located between the center console and driver seat of a stolen Honda Civic. Fingerprints found on the Device matched to Kentreal EVANS. The Device was later inventoried as ATF Item #16.

The Device is currently located at the ATF Milwaukee Field Office.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**
**Particular Things to be Seized**

1    All records and information on the Devices described in Attachment A that relate to a violation of Title 18 U.S.C. § 2119 (carjacking), Title 18 U.S.C. § 924(c) (use of a firearm during the commission of a violent crime), Title 18 U.S.C. §§ 844(i) (use of fire to damage property affecting interstate commerce), and Title 18 U.S.C. §§ 844(h) (use of fire in furtherance of a federal felony) including:

    a.   Preparatory steps taken in furtherance of these crimes;

    b.   Any audio, video, and/or photograph(s) files on the phone of criminal activity or of evidentiary value;

    c.   All voicemail and call records;

    d.   All text messages;

    e.   All social media sites used and applications for social media sites;

    f.   All internet activity;

    g.   All location data including from the phone and/or from any downloaded applications;

2.   Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3.   Records evidencing the use of the Internet Protocol address to communicate, including:

    a.   records of Internet Protocol addresses used;

    b.   records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>An Apple iPhone (unknown serial number) that was located between the<br>center console and driver seat of a stolen Honda Civic. Fingerprints<br>found on the Device matched to Kentreal EVANS, currently in custody at<br>the ATF Milwaukee Field Office, item #16 | ) )<br>) )<br>) )<br>) )    Case No.23-892M(NJ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 2119 | Carjacking |
| 18 U.S.C. 924(c) | Use of a firearm during the commission of a violent crime |
| 18 U.S.C. 844(i) | Use of fire to damage property affecting interstate commerece |

The application is based on these facts:

See attached affidavit

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Rick Hankins*
Digitally signed by RICKY HANKINS
DN: c=US, o=U.S. Government, ou=Dept of Justice, ou=ATF, cn=RICKY HANKINS
0.9.2342.19200300.100.1.1=1500100169945 6
Date: 2023.04.17 12:23:11 -05'00'

_____
*Applicant's signature*

Rick Hankins, Special Agent, ATF
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date:4/18/2023
_____

*Judge's signature*

City and state: Milwaukee, WI      Honorable Nancy Joseph, US Magistrate Judge
_____
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Rick Hankins, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property— electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Special Agent of the U.S. Department of Justice's ATF, currently assigned to the Milwaukee Field Office. I have been so employed since April 2003. My duties as a Special Agent with the ATF include investigating alleged violations of the federal firearms, explosives, and arson statutes.

3.      I have completed approximately 26 weeks of training at the Federal Law Enforcement Training Center in Glynco, Georgia, as well as the ATF National Academy.  That training included various legal courses related to constitutional law as well as search and seizure authority.  Additionally, I have received training on how to conduct various tasks associated with criminal investigations, such as interviewing, surveillance, and evidence collection.

4.      In addition to my duties as a criminal investigator, I am also an ATF Certified Fire Investigator (CFI). As an ATF CFI, I am tasked with providing expert opinions as to the origin and cause of fires. I obtained the ATF CFI certification in 2009 following a two-year training program that centered on various fire science topics including, but not limited to: chemistry, fire dynamics, and building construction. The two-year ATF CFI certification program consisted of college courses, written exams, research papers, reading assignments, practical training exercises, and test burns of various materials. I am re-certified annually as an ATF CFI. To date, I have

participated in over 295 fire scene examinations and have testified as an expert. Additionally, I have been certified as a fire investigator by the International Association of Arson Investigators since June 2011. I have received over 1,550 class hours of fire-related training. Furthermore, I have been an instructor regarding fire-related topics on multiple occasions for the following agencies and institutions: The National Fire Academy (FEMA), International Association of Arson Investigators Chapter 25, Waukesha County Technical College, and Blackhawk Technical College. I have also participated in over 223 live fire training exercises, where I started training fires and observed fire growth and development. Finally, I was a full-time instructor at the ATF National Academy from approximately August 2015 to August 2016, where I taught several topics during Special Agent Basic Training for new ATF recruits. Specifically, I was a primary instructor for the arson block of training at the ATF Academy.

5.      I have previously applied for and received search warrants related to cell site data and other related cellphone company records.

6.      This affidavit is based upon my personal knowledge as well as information provided to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. This affidavit is also based upon information gathered from interviews of citizen witnesses, reports, official records, law enforcement reports, and my training and experience.

7.      Through my experience and training as a firearm and arson investigator, I am aware that electronic devices, such as cellphones, can be used to store and save audio, video, and text files that can link to a variety of criminal activity. I am also aware that smart cellphones are capable of capturing location history for the device.

8.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 18 U.S.C. § 2119 (carjacking), Title 18 U.S.C. § 924(c) (use of a firearm during the commission of a violent crime), Title 18 U.S.C. §§ 844(i) (use of fire to damage property affecting interstate commerce), and Title 18 U.S.C. §§ 844(h) (use of fire in furtherance of a federal felony) have been committed.  There is also probable cause to search the information described in Attachment A, an Apple iPhone (ATF Item #16), for evidence of these crimes as further described in Attachment B.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

9.      The property to be searched is an Apple iPhone recovered from a stolen vehicle following a law enforcement pursuit on March 14, 2023, in the City of Milwaukee, more fully described as the following, hereinafter referred as the "Device":

   a.  An Apple iPhone (unknown serial number) that was located between the center console and driver seat of a stolen Honda Civic.  Fingerprints found on the Device matched to Kentreal EVANS.  The Device was later inventoried as ATF Item #16.

The Device is currently located at the ATF Field Office in Milwaukee, WI.

10.     The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

11.     On February 19, 2023, at approximately 5:43AM, the Milwaukee Police Department responded to a shooting near 1727 West Mineral Street, Milwaukee, Wisconsin (**"Location 1"**).  Upon their arrival, police subsequently located A.A., who had been shot multiple times.  A.A. was found lying on the front porch of XXXX South 18th Street and transported to a hospital.

12.     The Milwaukee Police Department later interviewed A.A. who stated he and his friend, C.B., were at Potawatomi Casino and then went to a party near South 34th Street and West Pierce Street in Milwaukee **("Location 2")**.  A.A. said he was driving a Chrysler 300 car that had been rented by his brother, who was later identified as M.A..  As he and C.B. left the party and were walking to the Chrysler 300, A.A. said they were approached by 5 unknown black males wearing ski masks and carrying firearms.  A.A. stated he was struck multiple times in the head by the suspects' firearms while the suspects demanded to know where "the money was."  A.A. stated he told the suspects he did not know what they were talking about.  A.A. further said the suspects went through his pockets and took his money, necklace, grills, cellphone [phone # (262) 283-2021], and keys to the Chrysler 300 rental car. A.A. said he and C.B. were then forced at gunpoint into the suspects' white SUV.  A.A. stated the suspects drove him and C.B. to C.B.'s address after C.B. provided his address.  A.A. said the suspects exited the SUV at one point, at which time he exited the SUV and attempted to run away.  A.A. stated he heard multiple gunshots and was struck multiple times in his leg, ankle, and foot.  A.A. believed C.B. was targeted for the robbery because C.B. has posted social media videos in which C.B. had flashed a lot of money.

13.     The Milwaukee Police Department also interviewed C.B, who was located at his residence - XXXX West Mineral Street.  C.B. stated he posted a message on Facebook on February 18, 2023, asking if anyone wanted to go out.  C.B. said he received a phone call from A.A., who he has known since high school.  C.B. stated he and A.A. made plans to go out together.  C.B. said A.A. picked him up in a 4-door Chrysler rental car.  C.B. stated he, A.A., and their friend "Michael" first went to Element Nightclub in downtown Milwaukee and then to Potawatomi Casino.  While at the casino, C.B. stated he received a phone call from a female he knew as "Pat" who invited him to a party near South 34th Street and West Pierce Street in

Milwaukee. C.B. further said he is friends with "Pat" on social media. C.B. stated he and A.A. dropped Michael at home before going to the party. C.B. said he and A.A. stayed at the party for approximately 45-60 minutes and then left. As they were approaching A.A.'s Chrysler rental car, C.B. said two unknown vehicles stopped by them and five unknown male suspects (suspects) exited one of the vehicles. All five were wearing masks. C.B. further said the masked suspects pointed firearms at C.B. and A.A. and C.B. was struck in the head with firearms prior to being forced into the suspect vehicle. C.B. said the suspects went through his pockets and took $200 cash and his Apple iPhone [number (414) 759-7872]. C.B. said the suspects asked where they lived and C.B. provided his home address – XXXX West Mineral Street. C.B. further said A.A. fled the vehicle when they arrived at his address, so he also fled from the vehicle, ran into XXXX West Mineral Street, and did not come out until police arrived.

14. The Milwaukee Police Department recovered (24) 9mm ammunition casings from the shooting scene near 1727 West Mineral Street.

15. On February 19, 2023, at approximately 6:45AM, the Milwaukee Police and Fire Departments responded to a vehicle fire at 227 East Townsend Street, Milwaukee, Wisconsin **("Location 3")**. The burned vehicle was identified as a 2020 grey Chrysler 300 with WI license plate #11294AFT (VIN # 2C3CCAGG3LH146281), which was the same vehicle rented on February 18, 2023, by M.A. from Enterprise Car Rental located 5300 South Howell Avenue in Milwaukee, Wisconsin. A 911 caller stated they observed a black male suspect standing near the vehicle within seconds of the vehicle being engulfed in flames. The black male was wearing black clothing with a black face mask. Under these circumstances, I believe the rental car was a vehicle used in interstate commerce that was intentionally destroyed by means of fire.

16.     The (24) 9mm ammunition casings recovered from the 1727 West Mineral Street shooting scene were later examined by an ATF National Integrated Ballistic Information Network (NIBIN) Correlation Specialist who determined the 24 ammunition casings were fired from two separate firearms.  Furthermore, the NIBIN Correlation Specialist found that one of the firearms used during the 1727 West Mineral Street shooting also showed a significant correlation to a firearm used during a shooting in West Allis, Wisconsin on January 3, 2023.  The West Allis Police Department recovered (7) 9mm ammunition casings near 7527 West Becher Street, West Allis, Wisconsin **("Location 4")** following a reported shooting near that address at approximately 2:00PM on January 3, 2023 (West Allis Police Department Case #23-000288).  The NIBIN correlation between the two shooting scenes and the recovered casings have not yet been confirmed by microscopic comparison, but the similarities are significant and resulted in a NIBIN Hit.

17.     On February 28, 2023, ATF interviewed C.B. and C.B. stated the party near 34th Street and Pierce Street was held inside a photography studio on the first floor of a commercial building.  C.B. used digital Google Streetview images on Your Affiant's cellphone and initially identified 3530 West Pierce Street as the building where the party was held.  Additionally, C.B. said an unknown Hispanic male traveled with C.B. and A.A. to the party.  C.B. stated the unknown Hispanic male was an associate of A.A. who they ran into earlier that same night.

18.     Also on February 28, 2023, ATF Agents canvassed the area of 3530 West Pierce Street and found that address to be a U-Haul self-storage building.  ATF Agents then contacted a remodeling construction crew that working at the commercial building located at 3600 West Pierce Street.  The construction crew stated that 3600 West Pierce Street had a photography studio on the first floor, which was unlocked and open.  ATF Agent also contacted a resident at XXXX

South 36th Street who had exterior surveillance cameras that faced toward the intersection of West Pierce Street and South 36th Street, and also captured the front door of 3600 West Pierce. Agents viewed the surveillance video from February 19, 2023, and observed the 2020 Chrysler 300 arrive at approximately 4:36AM and park immediately across the street from the front door of 3600 West Pierce Street. Three individuals exited the Chrysler and subsequently entered 3600 West Pierce Street. The surveillance video also captured a white Jeep SUV travel by 3600 West Pierce Street on three occasions between 4:43AM and 4:46AM. What appeared to be the same white Jeep SUV backed into the north/south alley between 3600 West Pierce Street and 3530 West Pierce Street at approximately 4:54AM. The surveillance camera showed C.B., A.A., and the unknown male exit 3600 West Pierce Street at approximately 5:17AM and walk to the Chrysler 300. A.A. had opened the driver's door and C.B. was near the middle of West Pierce Street when four suspects emerged from the area of the white Jeep SUV and appeared to point firearms at the victims at which time the victims got on the ground. The video showed suspects remove the shirt from C.B. and leave it in the road. The video further showed C.B. and A.A. were ushered by the suspects into the white Jeep SUV while the unknown third male appeared to be placed in the Chrysler 300. The white Jeep SUV then traveled south on South 36th Street followed by the Chrysler 300, which was presumably driven by a suspect.

19.     As further detailed in this affidavit, the cellphone with corresponding number (414) 975-7826 ["The Device"] is a cellphone associated with Kentreal EVANS and I believe that EVANS possessed this cellphone on February 19, 2023, during the commission of a carjacking, abduction, shooting, and arson. I further believe EVANS was likely in possession of this cellphone during a shooting in West Allis, Wisconsin on January 3, 2023. Based on T-Mobile records, EVANS' cellphone traveled to and from the general crime locations on February 19,

2023, that appear to be consistent with the general travel of the suspect vehicles. Additionally, the following phone numbers were found in EVANS' call detail records and appear to be associates to EVANS: (414) 788-9051 [T-Mobile], (414) 526-1156 [AT&T], (414) 690-1302 [AT&T], and (414) 309-9038 [Verizon]. I further believe that the possessor of number (414) 788-9051 was likely traveling with EVANS because, according to T-Mobile records, cellphone (414) 788-9051 also traveled to and from the general crime locations on February 19, 2023, that appear to be consistent with the general travel of the suspect vehicles. I believe that there was likely a co-conspirator present at the party where the victims were carjacked and abducted on February 19, 2023, because EVANS' cellphone and phone (414) 788-9051 did not appear in the area of the carjacking until after phone number (414) 526-1156 had contact with number (414) 397-2342, which is a device that was already located at or near the party location. Additionally, number (414) 526-1156 also contacted the potential party insider after the suspect's vehicle parked outside the party location but before the carjacking. I also believe that EVANS may have been communicating with a co-conspirator around this time because he exchanged text messages with (414) 690-1302 while the suspect vehicle was driving in the area of the party location. I further believe that the possessor of (414) 309-9038 was a potential co-conspirator because that phone number called (414) 788-9051 after the carjacking and abduction and while (414) 788-9051 was located in the area of the shooting just before the shooting. Because I believe there was likely at least one co-conspirator at the party, in addition to the suspects leaving the carjacking in two separate vehicles, I further believe that all calls or text messages between approximately 4:30AM – 7:00AM on February 19, 2023, related to the aforementioned numbers will contain evidence of a crime. The Device was recovered on March 14, 2023, and EVANS' fingerprints were found on The Device.

20.     Law enforcement does not know with absolute certainty that the Device is believed to have cell phone number 414-975-7826 as the possessor of the Device fled from law enforcement and the Device, of course, has thus far not been searched. However, I believe it is probable that the Device is associated with the same cell phone with number 414-975-7826 that was possessed by EVANS on January 3, 2023, and February 19, 2023, and that it will contain evidence of a crime, including location information, text message and other communications with co-actors and other relevant evidence as set forth in this affidavit. Additionally, law enforcement previously obtained call detail records for The Device, believed to be (414) 975-7826, and the records showed that The Device was active until at least February 21, 2023, which was the last date of the previous request. The fact that Evans kept his cell phone between January 3, 2023 and did not abandon his cell phone after the February 19, 2023, incident supports probable cause that Evans (or whomever so possessed the Device) continued to use the Device until it was abandoned on March 14, wherein EVANS obtained a new cell phone number prior to his arrest on March 27, 2023.

21.     On March 9, 2023, Your Affiant received records from T-Mobile related to Federal search warrant #23-M-303.  The records included Timing advance "True Call" data related to devices that were within the vicinity of the four aforementioned crime locations in Milwaukee, those being 3600 W. Pierce Street (Location 2), 1727 W. Mineral Street (Location 1), 227 East Townsend Street (Location 3), and the West Allis shooting location at 7527 West Becher Street (Location 4). A member of the FBI Cellular Analysis Survey Team (CAST) later utilized software to analyze the T-Mobile data in an attempt to identify cellular devices that were within the vicinity of at least two of the four crime locations at or near the time of the crimes. Location #4 was a crime scene separated from the other locations by considerable distance and

occurred on a different date than the other crimes. For this reason, the FBI initially focused the query of T-Mobile data toward identifying any potential common cellular devices that were found to be within the vicinity of Location #4 as well as being present near any of the other three crime locations. Location #3 was a crime scene also separated from the other locations by considerable distance. Therefore, the FBI focused a query of the data toward identifying potential common cellular devices that were found within the vicinity of Location #3 as well as being present near any of the other three crime locations. Based on the aforementioned query of T-Mobile data, the FBI identified the following six cellular devices:

(1) IMSI #310260662247705 was found to be present near crime locations #1, #2 and #4
(2) IMSI #310260263161569 was found to be present near crime locations #1 and #4
(3) IMSI #310260918216306 was found to be present near crime locations #1 and #4
(4) IMSI #310260700564993 was found to be present near crime locations #1 and #4
(5) IMSI #310260560070110 was found to be present near crime locations #2 and #3
(6) IMSI #310260057684411 was found to be present near crime locations #2 and #3

22.     There were four common IMSI numbers between the shooting scene in West Allis on January 3, 2023, and the shooting scene on West Mineral Street in Milwaukee on February 19, 2023, which is consistent with the number of suspects (4) that witnesses stated were at the West Mineral Street shooting.

23.     Additionally, the two common IMSI numbers found to be near the carjacking location and the vehicle arson location is consistent with the number of occupants (2) observed getting into the Chrysler 300 at the carjacking location.

24.     Your Affiant obtained a federal search warrant (23-M-332) for additional timing advance data and subscriber information related to the above six listed IMSI numbers. Upon receipt of the additional data from T-Mobile (ATF Item #12) on March 29, 2023, Your Affiant was able to determine that above listed IMSI #2-6 were not likely suspect devices.

Specifically, IMSI #2,3,4 and 6 were reportedly in other locations that were not within 100 meters of 3600 West Pierce Street on February 19, 2023, between 4:54AM – 5:18AM, when surveillance video definitely showed the suspects were in that precise area. Additionally, IMSI #5 did not show movement from the area until approximately 5:35AM on February 19, 2023, which is inconsistent with the known movement of the suspects.

25. The additional records obtained related to IMSI #310260662247705 showed that this IMSI locations and movements appeared to be consistent with those of the suspect vehicle on February 19, 2023.

26. IMSI #310260662247705 was a cellular device assigned phone number (414) 975-7826 during the timeframe requested in the search warrant – January 3, 2023; and February 18-21, 2023. The account for (414) 975-7826 is listed to KENTREAL EVANS at 3618 North 14th Street, Milwaukee, WI 53206 with an activation date of November 29, 2022. According to an email received from a T-Mobile Subpoena Compliance Specialist Fara Julien, the IMSI # associated with phone number (414) 975-7826 changed sometime after February 21, 2023, which is consistent with the user changing cellphone devices.

27. A review of the T-Mobile timing advance data for (414) 975-7826 for January 3, 2023, showed that this cellphone device was in the area of South 76th Street and West Becher Street in West Allis at or near the time of a reported shooting on that date at approximately 2:00PM. The recorded movement of cellphone number (414) 975-7826 showed it arrived in the shooting area between 1:58-1:59PM and then traveled away from that area.

28. A review of the T-Mobile timing advance data for (414) 975-7826 for February 19, 2023, showed that this cellular device was in the area of 3600 West Pierce Street,

Milwaukee, Wisconsin from approximately 4:42AM to approximately 5:19AM, when it moved away from that area. Specifically, the timing advance data estimated this IMSI # was in close proximity to 3600 West Pierce Street from approximately 4:57AM until the IMIS# appeared to move from the area at 5:19AM. T-Mobile placed estimated locations for this IMIS# to be near where the suspect white Jeep SUV was parked at the time of the robbery.

29.     After cellphone (414) 975-7826 left the area of 3600 West Pierce Street, it traveled briefly to the north side of I-94 and then traveled to the southside of I-94. According to T-Mobile records, this cellphone device was reported to be at or near 1621 South 24th Street at 5:32AM and was located at or near 1900 West Bruce Street at 5:37AM. The below diagram depicts the proximity of the two aforementioned locations as they relate to the location of a shooting at 1727 West Mineral Street that was reported at approximately 5:43AM.



30.     A review of the call detail records provided by T-Mobile showed that cellphone number (414) 975-7826 had multiple contacts with cellphone number (414) 526-1156 on February 18, 2023.  Additionally, the records showed that (414) 526-1156 called (414) 975-7826 at 6:37:01AM.  According to T-Mobile cell tower dump records (ATF Item #10, Excel file 12566346), cellphone number (414) 975-7826 utilized a cellphone tower at 6:37AM that also provided coverage for the area that includes 227 East Townsend Street, which was the location of the Chrysler 300 vehicle arson.

31.     Additional review of the call detail records for (414) 975-7826 showed that this number had multiple contacts with the following phone number on February 18-19, 2023: (414) 788-9051.  The previously provided T-Mobile tower dump data identified IMSI

#310260704213534 to be assigned cellphone number (414) 788-9051 (ATF Item #10, Excel file 12566307). A review of the T-Mobile timing advance data for the area around 3600 West Pierce Street for February 19, 2023 (ATF Item #7), showed that cellphone device (414) 788-9051/ IMSI #310260704213534 was in the area of 3600 West Pierce Street, Milwaukee, Wisconsin from approximately 4:41AM to approximately 5:19AM, when it moved away from that area. Specifically, the timing advance data estimated this IMSI# was in close proximity to 3600 West Pierce Street until the device appeared to move from the area at 5:19AM. T-Mobile placed estimated locations for this device to be near where the suspect white Jeep SUV was parked at the time of the robbery.

32.     Further review of the T-Mobile tower dump records (ATF Item #10, Excel files 12566307 & 12566308) showed that (414) 526-1156 called (414) 788-9051 at 5:31:47AM and 5:34:26AM on February 19, 2023, while (414) 788-9051 utilized a cellphone tower that provided coverage for 1727 West Mineral Street.

33.     The call detail records for (414) 975-7826 also showed two contacts with phone number (414) 309-9038, including at 12:56AM on February 19, 2023. The previously provided T-Mobile tower dump records (ATF Item #10, Excel file 12566307) showed that (414) 309-9038 called (414) 788-9051 at 5:31:51AM and 5:31:57AM on February 19, 2023, while (414) 788-9051 utilized a cellphone tower that provided coverage for 1727 West Mineral Street.

34.     The call detail records for (414) 975-7826 further showed two received text messages from (414) 690-1302 at 4:47AM on February 19, 2023, and one response from (414) 975-7826 to that number.

35.     T-Mobile tower dump records showed that (414) 526-1156 called (414) 397-2342 at 4:40AM and 4:57AM on February 23, 2023, while (414) 397-2342 was at or near 3600 West Pierce Street.  The IMSI # for (414) 397-2342 is 310240178106982 and T-Mobile timing advance data (ATF Item #7) estimated the location for this device to be at or near 3600 West Pierce Street.

36.     A query of the address 3618 North 14th Street, Milwaukee, Wisconsin showed a listed resident as Kentreal Tommie Lee EVANS (B/M, DOB: 5/11/2001).  EVANS is on active Wisconsin DOC supervision from a 2018 Milwaukee County felony conviction for driving a vehicle without consent, and EVANS' listed address is 3618 North 14th Street.

37.     A query of Wisconsin DOC archived inmate recorded calls showed that EVANS placed multiple calls to the following two numbers while he was incarcerated in 2022: (262) 676-8174 and (414) 369-0531.  T-Mobile call detail records for (414) 975-7826 showed multiple contacts with those same two numbers.

38.     Your Affiant reviewed Milwaukee Police Department reports regarding IR #23-057-0088.  The following is a summary of those reports:

39.     The Milwaukee Police Department investigated a report of a shooting that occurred near 2967 North 57th Street in Milwaukee at approximately 1:30AM on February 26, 2023.  R.Y.W. reported that she had attended a party on that date and was dropped off at her vehicle which was parked near 2967 North 57th Street.  When she arrived at her parked vehicle, R.Y.W. stated she observed her boyfriend, Kentreal EVANS (DOB:5/11/XXXX) standing next to a vehicle with a handgun in his hand, pointing at the ground.  R.Y.W. further said she got into her vehicle and began to drive away when she heard gunshots and her vehicle was struck by a bullet.  The

Milwaukee Police Department subsequently recovered three fired 9mm casings from the shooting scene near 2967 North 57th Street.

40.     Your Affiant also reviewed Milwaukee Police Department reports regarding IR #23-073-0106 and IR #23-073-0129, which involved the same stolen 2016 Honda Civic sedan. The following is a summary of those reports:

41.     The Milwaukee Police Department responded to a shooting near the intersection of South 2nd Street and National Avenue that occurred at approximately 3:17PM on March 14, 2023. The investigation revealed that L.L.W. had been shot in his neck, lip, arm, and leg. Review of surveillance video showed that the shots were fired at L.L.W. from two suspect vehicles: a BMW-5 and a gray Honda Civic bearing WI plate #APJ2292, which had previously been reported stolen. The Milwaukee Police Department recovered multiple fired 9mm casings at the shooting scene.

42.     The Milwaukee Police Department subsequently issued a Be-On-the-Look-Out (BOLO) for the Honda Civic and the Honda Civic was later observed on this same date at approximately 5:50PM. A marked police squad car attempted to traffic stop the Honda Civic but the car sped away from officers and a pursuit began. The Honda Civic was observed as it stopped in the alley behind 3976 North 27th Street. The driver exited the vehicle wearing an orange neon hoodie, blue jeans, and facemask, and he fled on foot. The driver was not located at the scene but the orange hoodie and facemask were recovered from the gangway of 3978 North 27th Street. The front passenger also exited the Honda Civic and fled on foot but was apprehended after he had scaled a nearby fence. The front passenger was identified as Levardis A. DOTSON (B/M, DOB: 8/05/XXXX). Review of officer worn body cameras showed that DOTSON was holding a firearm before dropping the firearm as he climbed over the fence. The firearm dropped by DOTSON was found to be a Glock model 43 9mm pistol with S/N BSAF716, which was reported as a stolen

firearm. The Milwaukee Police Department located two additional stolen firearms on the ground near the Honda Civic: a Glock model 22 .40 caliber pistol with S/N LXP195 that also had a switch attached, and a Glock model 43 9mm pistol with S/N BLLS523.

43. At the time of his arrest, DOTSON had the following drugs on his person: approximately 2.35 grams of suspected crack cocaine and approximately 2.71 grams of suspected meth.

44. A criminal history query of DOTSON showed he had a 2017 felony conviction in Milwaukee County for 2nd degree reckless injury and driving without consent (2017CF004542). Additionally, DOTSON has an open felony case in Milwaukee County for unlawful possession of a firearm (2021CF004148).

45. The stolen 2016 Honda Civic was subsequently towed to the Milwaukee Police Department secure impound lot and searched. During the search, investigators located a black Apple iPhone (MPD Inventory #23008565/1- The Device) between the center console and driver seat. Fingerprints located on that cellphone were later matched to fingerprints on file for Kentreal EVANS (B/M, DOB: 5/11/XXXX).

46. On March 18, 2023, the Milwaukee Police Department located an abandoned 2022 gray BMW 5 located behind the vacant residence at 3633 North 13th Street. The BMW had a bullet hole in it and showed the VIN #5UXCR6C05N9N31925, which listed to a stolen vehicle. The BMW was subsequently searched and the following was located: clear plastic bags, two digital scales, a Glock magazine, and (8) fired round of .223 ammunition.

47. The following individuals' fingerprints were found to be on the BMW: Khary J. TOWNSEND (B/M, DOB: 11/19/XXXX), Jaylin T. Hardwrict (B/M, DOB: 10/12/XXXX), and Sean Z. Colon (B/M, DOB: 12/04/XXXX).

48.     On March 27, 2023, the Milwaukee Police Department observed a stolen vehicle that was being driven recklessly (MPD case #230860110).  The vehicle refused to stop and a law enforcement pursuit ensued.  The driver and sole occupant of the stolen vehicle fired shots at officers during the pursuit.  Police officers subsequently apprehended the driver and identified him as Kentreal EVANS.  EVANS was found to be in possession of a cellphone at the time of his arrest on March 27, 2023, with suspected phone number (414) 628-9558, as identified in the MPD report.  Investigators also located a 9mm pistol inside the stolen vehicle.  EVANS is in custody and has been charged with numerous violations of Wisconsin criminal statutes for the events that occurred on March 27, 2023.  It is believed that EVANS obtained a new cellphone number after he had to abandon The Device when he fled from police on March 14, 2023.

49.     On April 3, 2023, Your Affiant took custody of the Apple iPhone "The Device" (MPD Inventory ##23008565/1) and inventoried The Device as ATF Item #16.

50.     Based on my training and experience, individuals carry their cellular phones on their person or in a very close vicinity whether it is day or night. Further, most individuals have their own cellular phones, so it is likely the subject(s) cellular phone is using and/or registering with the cellular tower providing service in the general geographic area of the crime.

**TECHNICAL TERMS**

51.     Based on my training and experience, I use the following technical terms to convey the following meanings:

    a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or

traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

c. GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated "GPS")

consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

d. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

e. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

52. Based on my training, experience, and research, I know that the Devices have capabilities that allow it to serve as a wireless telephone, digital camera and video recorder,

portable media player, internet web browser, and GPS navigation device. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

53.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

54.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

    a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active.  Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record

information about the dates files were created and the sequence in which they were created.

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

55. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant. The examination may require authorities to employ techniques, including but

not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

56.     *Manner of execution.*  Because this warrant seeks only permission to examine the Device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

57.     I believe the facts set forth above show that there is probable cause to conclude that The Device believed to have been possessed by Kentreal EVANS, as described in Attachment A and Attachment B will contain evidence of federal crimes, including violations of Title 18 U.S.C. § 2119 (carjacking), Title 18 U.S.C. § 924(c) (use of a firearm during the commission of a violent crime), Title 18 U.S.C. §§ 844(i) (use of fire to damage property affecting interstate commerce), and Title 18 U.S.C. §§ 844(h) (use of fire in furtherance of a federal felony) have been committed. There is also probable cause to search the information described in Attachment A for evidence o these crimes as further described in Attachment B.

**<u>ATTACHMENT A</u>**
**Property to Be Searched**

The property to be searched is a cellular phone recovered from a stolen Honda Civic bearing Wisconsin plate ##APJ2292 that was seized on March 14, 2023, more fully described as the following:

> a. An Apple iPhone (unknown serial number) that was located between the center console and driver seat of a stolen Honda Civic. Fingerprints found on the Device matched to Kentreal EVANS. The Device was later inventoried as ATF Item #16.

The Device is currently located at the ATF Milwaukee Field Office.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

# ATTACHMENT B
## Particular Things to be Seized

1   All records and information on the Devices described in Attachment A that relate to a violation of Title 18 U.S.C. § 2119 (carjacking), Title 18 U.S.C. § 924(c) (use of a firearm during the commission of a violent crime), Title 18 U.S.C. §§ 844(i) (use of fire to damage property affecting interstate commerce), and Title 18 U.S.C. §§ 844(h) (use of fire in furtherance of a federal felony) including:

  a.   Preparatory steps taken in furtherance of these crimes;

  b.   Any audio, video, and/or photograph(s) files on the phone of criminal activity or of evidentiary value;

  c.   All voicemail and call records;

  d.   All text messages;

  e.   All social media sites used and applications for social media sites;

  f.   All internet activity;

  g.   All location data including from the phone and/or from any downloaded applications;

2.   Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3.   Records evidencing the use of the Internet Protocol address to communicate, including:

  a.   records of Internet Protocol addresses used;

  b.   records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.